(55 South. 336.)

No. 18,319.

## BERNARD v. LAY.

(May 8, 1911.)

*(Syllabus by the Court.)*

SEPARATION FROM BED AND BOARD—PERSONAL VIOLENCE—BURDEN OF PROOF.

Where personal violence is exercised by the husband against the wife, the burden is on him to prove a lawful excuse.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 354–364; Dec. Dig. § 109.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Annie S. Bernard, wife of Louis Lay (or Louis M. Lay), her husband against Louis Lay (or Louis M. Lay), her husband. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

James B. Rosser, Jr., for appellant. Legier & Gleason, for appellee.

LAND, J. Plaintiff sues for a separation from bed and board, on the ground of cruel treatment and habitual intemperance on the part of her husband. Plaintiff also sued out an injunction against the defendant, restraining him from disposing of the community property pendente lite.

Defendant pleaded the general issue, and reconvened, praying for a judgment for separation from bed and board, on the ground that the plaintiff was intemperate and addicted to the use of intoxicating liquors, and, when intoxicated, she was violent and abusive; that on December 25, 1909, plaintiff, while intoxicated, abused and vilified the respondent, striking and injuring him in a painful manner; and that their living together was insupportable.

Plaintiff obtained an order of court directing the defendant to deliver and surrender all of her clothing and wearing apparel. When delivered, the same were found to have been so cut up as to be unfit for use.

Defendant escaped punishment for contempt by swearing that he had cut up the articles before the institution of the suit.

On the trial, the plaintiff adduced evidence to prove the allegations of her petition. The defendant offered no evidence whatever. There was judgment rejecting the demands of both parties, and dissolving the injunction. Plaintiff has appealed.

On Christmas evening of 1909, the attention of a number of persons in the vicinity was attracted by the cries of the plaintiff, and they saw her and her husband struggling on the sidewalk in front of their house. Mrs. Lundgrew, who lived just across the street, testified that her attention was attracted by the screaming of Mrs. Lay, and that, looking through the window, she saw Mrs. Lay on the step, and Mr. Lay standing over and holding her; that the witness then went out and stood on the edge of the sidewalk, and Mrs. Lay repeatedly cried out and begged somebody to call for the police, but nobody interfered; that she saw Mr. Lay raise and bring down his arm, as if striking a blow. The witness believed, but could not swear positively, that the plaintiff was struck. The same witness testified that she had known and visited Mrs. Lay for several years, and had never seen her drink intoxicating liquors. It may be here stated that there is no evidence in the record to show that Mrs. Lay ever indulged in the use of strong drinks.

Mrs. Lay left the house the same evening, and after her departure the defendant cut up her wearing apparel.

Mrs. Miller testified that Mrs. Lay had paid her a short visit one night in December, 1909, and that Mrs. Lay's ear was bleeding, and, further, that on another occasion Mr. Lay refused to permit his wife to enter the house.

Dr. Wolfe visited Mrs. Lay on December 26, 1909, and found her suffering from several contusions or bruises about the face

and neck. One of her ears was severely bruised.

The witness Jenks' memory seems to have been very defective, but he finally stated that he heard Mrs. Lay scream, and saw "a man have a woman on the step"; that they were Mr. and Mrs. Lay; that they were holding each other; that Mrs. Lay was stooping down, and Mr. Lay was standing over and holding her somewhere around the neck or body; did not see Mr. Lay strike Mrs. Lay; heard her call out, "Let me go!" "Let me loose!" that he stood there about two minutes, and then walked away.

Mrs. Gabriel heard some one hallooing, and, going to her door, saw Mrs. Lay lying across the steps, and Mr. Lay standing by her and holding her hands, or something of the kind. The witness did not see Mr. Lay strike Mrs. Lay.

Mr. Gabriel heard a woman's scream, and, looking out for a few seconds over his wife's shoulder, saw a woman lying across the step and Mr. Lay standing on the banquette. While looking, the witness did not see Mr. Lay strike his wife, or hold her. As the witness withdrew from the window, he heard Mr. Lay's "voice" say, "Get up!"

Louis Bader, 12 years of age, a nephew of the Lays, heard a hallooing, and on reaching their house saw Mrs. Lay sitting down, and Mr. Lay had his hand on her chin, and said, "Why don't you hush up hallooing?" The testimony of this boy is remarkable for what he did not see and hear. He saw Mrs. Lay weeping, but did not look at her face. He heard her cry out several times, but did not remember what she said. It is apparent that this boy was an unwilling witness, and the same may be said of several other witnesses for the plaintiff.

The answer of the defendant avers that Mr. Lay on December 25, 1909, was intoxicated, and made an assault and battery on the defendant. Not a single witness was offered by the defendant to prove these averments. When first seen, Mrs. Lay was lying across the step, and Mr. Lay was standing over her and holding her. While there is no direct proof of blows inflicted, the screams of Mrs. Lay and the severe bruises on her face, neck, and ear indicate that violence was used by the defendant during or before the struggle observed by the witnesses.

The answer avers that the plaintiff was the assailant, and inflicted serious injury on the respondent. There is no proof of these averments; but they are necessarily predicated on the assumption of a hostile encounter between the parties. The preponderance of the evidence shows that the defendant exercised physical violence against the plaintiff, and the burden was on him to prove justification or excuse. This he has not done.

The personal animosity of the defendant against his wife is demonstrated by the malicious destruction of her clothing and the defamatory charges against her set forth in his answer.

Each party alleges that the conduct of the other renders their living together insupportable. The evidence, we think, sufficiently shows that the blame for this condition of affairs rests on the husband.

It is therefore ordered that the judgment below be reversed, and it is now ordered that there be judgment in favor of the plaintiff, Mrs. Annie S. Lay, Born Bernard, and against Louis Lay, or Louis M. Lay, her husband, decreeing a separation from bed and board between them; and it is further ordered that the injunction be reinstated and perpetuated, and that all the property inventoried in this suit, be decreed to belong to the community existing between the said plaintiff and the said defendant, and that the defendant pay costs in both courts.